## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      No. CR 12-0944 RB

SOPHIA MONIQUE ZAYAS,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Ms. Zayas's Motion to Reconsider Motion to Withdraw Guilty Plea, filed on December 1, 2017. (Doc. 220.) The Court held hearings on this matter on March 26, 2018, and April 3, 2018. (*See* Docs. 229; 234.) Having considered the oral argument, briefs, and relevant law, the Court will deny the Motion.

**I.**      **Background**[1]

"On October 22, 2007, Annalicia Zayas, [Mr. and] Ms. Zayas's daughter, died just two months after she was born." (Doc. 201 at 1 (citing Presentence Report (PSR) at 3).) "Annalicia's autopsy showed she suffered multiple skull fractures, hemorrhages, and scalp contusions two to three hours before she died." (*Id.* (citing PSR at 4).) These were in addition to multiple other injuries, all in various stages of healing, that Annalicia had sustained over her life. (*Id.* at 1–2; *see also* Doc. 223-5.) Both Mr. and Ms. Zayas were arrested in 2012; Ms. Zayas pleaded guilty to an Information on February 24, 2014. (*See* Docs. 5; 6; 150; 152; 154.)

Ms. Zayas has contemplated withdrawing her guilty plea since September 2014. "In September 2014, Ms. Zayas wrote the Court a letter, expressing her desire to withdraw her guilty

---

[1] The Court set out the factual background of this case in its February 8, 2017 Memorandum Opinion and Order (the "February 2017 Opinion"), and incorporates it here by reference. (Doc. 201 at 1–4.)

plea and remove" her then-counsel. (Doc. 201 at 4.) The Court removed her counsel and "Magistrate Judge Lynch assigned Carlos Ibarra to represent Ms. Zayas." (*Id.* (citing Doc. 161); *see also* Docs. 159–60.) The Court later held a status conference, where "Ms. Zayas expressed issues with the PSR and wanted to meet with Dr. [Harry] Wilson" (Ms. Zayas's medical expert) "regarding the facts in" the PSR. (*See id.* at 2, 4.) "Ms. Zayas then filed a [pro se] Motion to Withdraw Plea of Guilty" in November 2015 (*see id.* at 4 (citing Doc. 166)), "and Mr. Ibarra filed a Motion to Withdraw as Attorney" (*id.* (citing Doc. 167)). Ms. Zayas filed a Supplemental Motion to Withdraw Plea of Guilty in October 2016. (*Id.* (citing Doc. 188).) During a hearing on the motions, the Court heard from Mr. Ibarra that he and Ms. Zayas were at odds over her desire to withdraw her guilty plea. (*See* Doc. 189 at 2:20–3:18.) The Court granted Mr. Ibarra's Motion to Withdraw as Attorney and reserved judgment on Ms. Zayas's Motion to Withdraw Plea of Guilty so that her new attorney could look at the matter. (*Id.* at 22:5–24:5.) Later in October 2016, Ms. Zayas filed an Amended Motion to Withdraw Plea of Guilty or in the Alternative, Motion for Reconsideration. (Doc. 192.) The Court denied each of Ms. Zayas's motions to withdraw her plea in its February 2017 Opinion. (Doc. 201 at 4, 17–18 (denying Docs. 166-1, 188, 192).)

On January 29, 2017, Ms. Zayas's codefendant and husband, Mr. Peter Zayas, sent an unsworn letter to the Court, in which he attempted to explain and take responsibility for three injuries found on the couple's daughter (the skull, wrist, and rib fractures). (*See* Doc. 206 at 7.) Mr. Zayas concluded that he "could no longer go on continuing with a lie knowing that is, [sic] [his] wife did not do this." (*Id.*)

Mr. Zayas's attorney requested that Mr. Zayas undergo a psychological examination, after which Mr. Zayas "agreed to an interview with the attorneys for" both the government and

Ms. Zayas. (*See* Doc. 215 at 1; *see also* Doc. 213 at 19:19–22:19.) Counsel for the parties met with Mr. Zayas after his psychological examination. (*See* Doc. 216 at 3.) Mr. Zayas refused to share the examination results, and he refused to provide any testimony on the substance of his letter when questioned by counsel for the United States. (*See id.*)

Ms. Zayas then moved for an evidentiary hearing, seeking to "discover and develop the exculpatory evidence" from Mr. Zayas. (Doc. 215 at 1.) During a hearing on her motion, Mr. Zayas's counsel stated that Mr. Zayas was willing to allow counsel for Ms. Zayas "to interview him in the presence of the Government." (Doc. 219 at 2.) "The Court directed the parties to record the interview" and denied Ms. Zayas's motion for an evidentiary hearing as moot. (*Id.* (denying Doc. 215).)

The parties interviewed Mr. Zayas on November 16, 2017. (*See* Doc. 220 at 1; 223 at 4; *see also* Doc. 223-3 (DVD of Nov. 16, 2017 Interview).) Neither party has provided the Court with a transcript of that interview, although the Government did submit DVD files of the interview with its response. (*See* Doc. 223-3.) The Government also submitted DVD files of Mr. Zayas's April 24, 2012 interview (*see* Doc. 223-2), which the Government argues is virtually identical to Mr. Zayas's November 16, 2017 interview. (*See* Doc. 223 at 5–6.)

Ms. Zayas now moves the Court to reconsider its February 2017 Opinion. (*See* Doc. 220.)

## II. Legal Standards

### A. Motion to Reconsider

"Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (citations omitted). "A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law." *Id.* (citing *Servants of Paraclete v.*

3

*Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "Specific grounds include: '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Id.* (quoting *Servants of Paraclete*, 204 F.3d at 1012 (internal citation omitted)). "A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *Id.* (citing *Servants of Paraclete*, 204 F.3d at 1012).

### B. Motion to Withdraw Guilty Plea

Pursuant to Rule 11(d)(2)(B), "a defendant may withdraw a plea of guilty [if] . . . the defendant can show a fair and just reason for requesting the withdrawal." A defendant proceeding under Rule 11(d)(2)(B) does not have an absolute right to withdraw a guilty plea. *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990). "Although a motion to withdraw a plea prior to sentencing should be 'freely allowed,' [the appellate court] will not reverse a district court's decision unless the defendant can show that the court acted 'unjustly or unfairly.'" *United States v. Hamilton*, 510 F.3d 1209, 1213–14 (10th Cir. 2007) (quotation omitted). The decision of whether to permit withdrawal of a plea "always and ultimately lies within the sound discretion of the district court to determine on a case by case basis . . . ." *United States v. Soto*, 660 F.3d 1264, 1267 (10th Cir. 2011) (quotation marks and citations omitted).

The Tenth Circuit analyzes seven factors when considering a motion to withdraw a plea:

(1) whether the defendant has asserted her innocence,
(2) whether the plea was knowing and voluntary,
(3) whether defendant was assisted by counsel,
(4) whether the defendant delayed filing her motion and, if so, why,
(5) whether withdrawal would prejudice the government,
(6) whether withdrawal would substantially inconvenience the court, and
(7) whether withdrawal would waste judicial resources.

*Hamilton*, 510 F.3d at 1214 (quotation omitted). Among the factors, the most important are whether the defendant asserted innocence, the validity of the plea, and the effectiveness of counsel. *Id.* at 1214–17. If the defendant cannot meet the burden to prove these factors, then the Court need not address the remaining factors. *United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009). The Tenth Circuit has suggested an additional factor: "the likelihood of conviction." *United States v. Carr*, 80 F.3d 413, 421 n.5 (10th Cir. 1996).

**III.    Analysis**

    **A.    Mr. Zayas's November 2017 testimony is not "new evidence."**

Ms. Zayas seeks reconsideration based on allegedly new evidence, that is, Mr. Zayas's November 16, 2017 interview. (*See* Doc. 220.) While Ms. Zayas fails to cite any portion of the interview,[2] the Court understands that she believes this interview (1) contributes to her assertion of innocence and (2) supports her argument that her "plea was not supported by a factual basis, or adequately supported by available evidence." (*Id.* at 3.)

As the Government demonstrates, however, Mr. Zayas's November 2017 testimony adds little to the interview he gave FBI agents in April 2012. (*See* Doc. 223.) In both the April 2012 and November 2017 interviews, Mr. Zayas: (1) "claims sole responsibility for causing the injuries reflected in the victim's autopsy" (*id.* at 5 (citing Doc. 223-2, File 3,[3] at 32:00; Doc. 223-3, File 2, at 12:30)); (2) "speculates that the victim's broken ribs must have occurred after he became frustrated and handled the victim roughly" (*id.* (citing Doc. 223-2, File 3, at 12:53; Doc. 223-3, File 1, at 14:30)); (3) "speculates that the circular lesions found on the victim's back must

---

[2] Interestingly, while Ms. Zayas states in her Motion that she had not obtained a copy of the November 16, 2017 interview at the time she filed the Motion, she *did* have a copy of the interview when she filed her Reply, yet she failed to cite any piece of the interview to buttress her arguments or in rebuttal to the Government's response in her Reply brief. (Doc. 228.)

[3] Doc. 223-2 contains one video recording of Mr. Zayas's April 2012 interview, and the recording is split into six files. Doc. 223-3 contains one video recording of Mr. Zayas's November 2017 interview, and the recording is split into two files.

have come from an incident when he grabbed the victim too tightly on the day of her death" (*id.* at 5–6 (citing Doc. 223-2, File 3, at 15:45; Doc. 223-3, File 2, at 7:00)); and (4) "speculates that the victim's skull fracture must have come from an incident when he struck the victim in the back of the head approximately a week before the victim's death" (*id.* at 6 (citing Doc. 223-2, File 3, at 28:50, File 4, at 26:55, File 5, at 50:45; Doc. 223-3, File 1, at 42:30)).

Ms. Zayas had absolutely no response to the Government's assertion that Mr. Zayas's interviews are substantially similar. The Court finds that the November 2017 is not "new evidence" and is an insufficient basis for the Court to reconsider its February 2017 Opinion.

> **B.** **Even if Ms. Zayas could demonstrate grounds for the Court to reconsider its February 2017 Opinion, Ms. Zayas has not established a fair and just reason to withdraw her guilty plea.**

Were the Court to find that a motion to reconsider was appropriate, Ms. Zayas would need to show a "fair and just reason for requesting the withdrawal" of her guilty plea. Fed. R. Crim. P. 11(d)(2)(B). Ms. Zayas offers two reasons in support of her motion, neither of which pass muster.

> **1.** **Ms. Zayas has not asserted a credible claim of legal innocence.**

Relevant to the first *Hamilton* factor, Ms. Zayas asserts that Mr. Zayas's interview supports her assertion of innocence. *See Hamilton*, 510 F.3d at 1214–15. Ms. Zayas argues that Mr. Zayas has taken "full responsibility for the injuries to his daughter" and "related that Ms. Zayas did not witness these events." (Doc. 220 at 2.) What stands out to the Court, however, is what Mr. Zayas's interviews do *not* clear up.

For example, the attorney for the Government, Ms. Maria Armijo, states that Annalicia's head injury would have required a significant amount of force, and that Annalicia would not have been acting normally after the head injury. (*See* Doc. 223-3, File 2 at 16:00 (discussing the

doctor's testimony at a state Children, Youth and Families Department hearing regarding changes in behavior after such a head injury).) Mr. Zayas stated, though, that Annalicia lived another week after the only head injury he can recall, when he hit the back of her head, and she was fine after he hit her. (Doc. 223-3, File 1 at 43:30 (describing the way he hit her as "kind of like getting her to go back to sleep, but obviously in a more forceful way because she sustained fractures to the back of the head, supposedly"), 45:10 (stating that this happened a week or more before her death), 45:35 (stating that after he hit her in the back of the head, she cried but did not throw up, and he remembers that she ate the next day), 46:05 (stating her behavior did not change).)

Mr. Zayas also discussed Ms. Zayas's binge drinking at length in both interviews. (*See* Docs. 223-3, File 1 at 29:15, 34:20, 35:20 (admitting Ms. Zayas was binge drinking at this time), 13:55; 223-2, File 2 at 35:35).) In 2012, Mr. Zayas specifically said that Ms. Zayas was incapacitated when she drank, and there was no way she could take care of children while drinking. (*See*, *e.g.*, Doc. 223-2, File 2 at 43:20 ("there's no way she could take care of a child"), 44:05 ("when Sophie drank, she binged"), 44:50 (explaining that he had to feed his wife and take her to the bathroom when she drank).) He acknowledged, however, that Ms. Zayas often cared for the children while he was working. (*See* Doc. 223-3, File 1 at 36:10, 37:20.) In the 2017 interview, Ms. Armijo pointed out that Mr. Zayas had no way of knowing whether Ms. Zayas harmed Annalicia when he was not at home. (*See* Doc. 223-3, File 2 at 12:45 (admitting that Ms. Zayas had opportunities to hurt Annalicia), 20:40 (admitting he does not know what Ms. Zayas did when he was not with her), 20:20 (acknowledging he was not with his baby the whole time).) There is also evidence that agents found vomit on the baby's onesie and in her bassinette that contained alcohol and Ms. Zayas's DNA. (Doc. 223-2, File 4 at 24:10.)

7

Finally, Mr. Zayas cannot explain the circular lesions on Annalicia's body. The autopsy results conclude these lesions are consistent with cigarette burns, but Mr. Zayas denies burning her. (*See* Doc. 223-3, File 2 at 7:05 (stating that he believes the lesions are from his grip on the day she died), 7:40 (Ms. Armijo said that the lesions showed healing, so could not have occurred the day she died); Doc. 223-2, File 2 at 59:20 (Mr. Zayas stated that he does not believe they were cigarette burns, "maybe my prints"); Doc. 223-5 at 7.) Ms. Zayas's medical expert, Dr. Wilson, has theorized that perhaps the lesions were due to life-saving measures medical personnel performed on Annalicia on the day of her death.[4] The autopsy results, though, show that the lesions were in "various stages of healing[, which] make these injuries fit with non-accidental trauma [and] . . . child abuse." (Doc. 223-5 at 3, 7.) Ms. Zayas, as the baby's "primary caretaker," (*see* Doc. 201 at 15 (citing (Doc. 189 at 8:25–9:7, 10:8–23))), would have seen these injuries, yet she failed to act on them. And regardless of Dr. Wilson's theory regarding the lesions, he "agreed that [Annalicia] was a victim of battered child syndrome [and] child abuse . . . ." (*Id.* at 10 (quoting Doc. 172 at 19).)

After listening to these two interviews and considering the Government's proffer at the February 2, 2016 hearing, the Court finds that Mr. Zayas's November 2017 interview is both substantially similar to his April 2012 interview and does not support a credible assertion of innocence. *See Hamilton*, 510 F.3d at 1214 (noting that "although the assertion of legal innocence may satisfy this factor in some instances, the mere assertion of a legal defense is insufficient; the defendant must present a *credible* claim of legal innocence") (citing *United States v. Cray*, 47 F.3d 1203, 1209 (D.C. Cir. 1995) (holding that a defendant "must

---

[4] Both Ms. Armijo and Ms. Stillinger (attorney for Ms. Zayas) discussed the dispute regarding the circular lesions at the April 3, 2018 hearing on this Motion. At the time of this Opinion, the transcript from that hearing has not yet been filed.

affirmatively advance an objectively reasonable argument that he is innocent"); *United States v. Hickok*, 907 F.2d 983, 985 n.2 (10th Cir. 1990) ("[T]he assertion of a defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty." (quotation and alteration omitted)). Even accepting as true Dr. Wilson's theory regarding the circular lesions, the Court finds that there is evidence sufficient to show that Ms. Zayas recklessly disregarded the extensive injuries Annalicia sustained throughout her life—whether she caused the injuries herself when caring for Annalicia while inebriated, or whether she permitted Annalicia to be placed in a situation where Mr. Zayas was injuring her.

### 2. Ms. Zayas's plea was knowing and voluntary and has a sufficient factual basis.

Ms. Zayas's second argument touches on whether her plea was knowing and voluntary. *Hamilton*, 510 F.3d at 1214. While the Court has already found that there was a sufficient factual basis for Ms. Zayas's plea and that her plea was knowing and voluntary (*see* Doc. 201 at 12–17), out of an abundance of caution the Court requested additional briefing on whether Ms. Zayas's Motion to Reconsider had any merit in light of *United States v. Carillo*, 860 F.3d 1293 (2017). (*See* Doc. 229.) As explained in the February 2017 Opinion, the twist in this case comes from the fact that at the time the Court took Ms. Zayas's plea, "New Mexico case law interpreted the legislative intent to be that the 'concept of criminal negligence, not recklessness, [was] the standard for negligent child abuse." (Doc. 201 at 13 (quoting *State v. Schoonmaker*, 176 P.3d 1105, 1117 (N.M. 2008)).) After the Court took Ms. Zayas's plea in 2014, the New Mexico Supreme Court "overruled *Schoonmaker* and clarified that the statute conveys recklessness as the applicable *mens rea*." (*Id.* (citing *State v. Consaul*, 332 P.3d 850, 858 (N.M. 2014)).)

Ms. Zayas contends that her "repeated statement that she *should have known* about the injuries to her daughter"—a phrase traditionally associated with the concept of negligence—does

not and cannot provide the factual basis for her plea." (Doc. 233 at 4 (emphasis added).) In deciding whether there is a sufficient factual basis for a plea pursuant to Rule 11(b)(3), the Court is not limited to Ms. Zayas's statements at the plea hearing. "A district court may look to evidence submitted after a guilty plea has been accepted to determine whether a factual basis for the plea continues to exist . . . ." *United States v. Landeros-Lopez*, 615 F.3d 1260, 1262–63 (10th Cir. 2010) (citation omitted) (discussing Fed. R. Crim. P. 11(b)(3)). Thus, as the Court explained above and in its February 2017 Opinion (*see* Doc. 201 at 15–16), even considering the evidence in Ms. Zayas's favor, there is still sufficient evidence in the record (i.e., the Government's proffer in the February 2, 2016 Hearing (Doc. 189), as well as Mr. Zayas's April 2012 and November 2017 interviews (Docs. 223-2; 223-3)) that Ms. Zayas "actually committed the offense" of child abuse resulting in great bodily harm in violation of N.M. Stat. Ann. § 30-6-1(D)(1)–(2). *See Landeros-Lopez*, 615 F.3d at 1263 (quotation and citation omitted).

In finding whether Ms. Zayas's plea was knowing and voluntary pursuant to Rule 11(b)(1)(G), the Court may examine her statements at the plea hearing along with the language used in the Information and in her Plea Agreement. *See*, *e.g.*, *United States v. Ferrel*, 603 F.3d 758, 763 (10th Cir. 2010); *Carillo*, 860 F.3d at 1303; *see also Spiridigliozzi v. United States*, 117 F. App'x 385, 391 (6th Cir. 2004) (noting that "when assessing whether a district court determined correctly that the defendant understood the elements of the crimes with which he is charged, pursuant to Rule 11(b)(1)(G)," the appellate court examines "the plea colloquy and what came before") (citation omitted). Here, Ms. Zayas focuses on her statements at the plea hearing, which she believes cast doubt on whether she sufficiently understood the required *mens rea* element of the crime as later clarified in *Consaul*, 332 P.3d 850. At the hearing, Ms. Zayas repeatedly said that she "should have known" about Annalicia's injuries, which she contends

"amount to no more than a parent's lament that she should somehow have prevented the harm to her daughter." (Doc. 233 at 4.) Ms. Zayas's statements at the plea hearing, taken alone, do give the Court pause. Yet, the Court is not limited to considering those statements in a vacuum.

At her plea hearing, Ms. Zayas acknowledged that she had read the Plea Agreement, which affirms in relevant part:

> On or about August 16, 2007 through October 22, 2007, **I caused or permitted Annalicia Zayas, my daughter who was less than 12 years of age, to be placed in a situation which endangered her life or health or tortured, cruelly confined or cruelly punished her**.
> I knew or should have known that my conduct created a substantial and foreseeable risk that my daughter, Annalicia Zayas, would be physically harmed or killed. **I disregarded that risk, and I was wholly indifferent to the consequences of the conduct and to the welfare and safety of my daughter**, Annalicia Zayas.
> **My actions resulted in great bodily harm to Annalicia**.
> Specifically, **as a result of my actions, my daughter sustained the following injuries** between August 16, 2007 through October 22, 2007, **that constitute great bodily harm**:
> (1) Posterior transverse skull fractures;
> (2) Rib fractures on at least two occasions; and
> (3) Radius and Ulna fractures.

(Doc. 152 at 3–4 (emphasis added); *see also* Doc. 172 at 5:16–6:10.) The bolded wording mirrors that contained in New Mexico's current Uniform Jury Instruction (UJI) for reckless child abuse pursuant to § 30-6-1(D):

> For you to find _____ (name of defendant) guilty of child abuse resulting in great bodily harm, [as charged in Count _____ ], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. _____ (name of defendant) _____ (describe conduct or course of conduct alleged to have been child abuse).
> 2. By engaging in the conduct described in Paragraph 1, _____ (name of defendant) **[caused] [or] [permitted]** _____ (name of child)
> [**to be placed in a situation that endangered the life or health** of _____ (name of child);]
> [OR] . . .
> [to be **[tortured] [or] [cruelly confined] [or] [cruelly punished]**;]

11

3. _____ (name of defendant) showed a reckless disregard [without justification] for the safety or health of _____ (name of child). To find that _____ (name of defendant) showed a reckless disregard, you must find that _____ (name of defendant)'s conduct was more than merely negligent or careless. Rather, you must find that _____ (name of defendant) **[caused] [or] [permitted] a substantial and unjustifiable risk of serious harm to the safety or health** of _____ (name of child). A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than _____ (name of defendant) out of concern for the safety or health of _____ (name of child);
[4. _____ (name of defendant) was a parent, guardian or custodian of the child, or _____ (name of defendant) had accepted responsibility for the child's welfare;]
5. _____ (name of defendant)'s conduct resulted in great bodily harm to _____ (name of child);
6. _____ (name of child) was under the age of eighteen (18);
7. This happened in New Mexico on or about the _____ day of _____, \_\_\_.

UJI 14-615 (emphasis added).

While it is true that the Plea Agreement also contains the confusing "knew or should have known" language that the New Mexico Supreme Court has disavowed (*see* Doc. 152 at 3), it was supplemental to the remaining language in the Plea Agreement, which clearly indicates a recklessness *mens rea* and was sufficient to put Ms. Zayas on notice that she was also pleading guilty to acting recklessly. Accordingly, despite the later clarification regarding the *mens rea* element of the charged crime, and even with Ms. Zayas's statements at her plea hearing that seemed to stop short at admitting negligence, the Court finds that the language in the Plea Agreement was sufficient to apprise Ms. Zayas of all elements of the charged crime, including recklessness. Ms. Zayas's plea was knowing and voluntary.

### 3. The balance of the *Hamilton* and *Carr* factors weighs against allowing Ms. Zayas to withdraw her guilty plea.

Ms. Zayas did not offer any arguments regarding the remaining *Hamilton* and *Carr* factors, and the Court concludes that its findings in the February 2017 Opinion stand.

*Defendant's Assistance of Counsel*

"Ms. Zayas was assisted by 'professional, competent'" counsel. (Doc. 201 at 17 & 9–11.)

*Defendant Delayed Filing Her Motion*

After she entered her guilty plea, Ms. Zayas waited seven months to express any desire to the Court regarding a withdrawal of her plea, and she did not file a formal motion to withdraw her plea until 19 months after her plea hearing. (*See* Doc. 201 at 4 (discussing September 2014 letter and Doc. 166).) The Tenth Circuit has found that even a three-month delay in filing a motion to withdraw a guilty plea represents an "extended" delay "and may suggest manipulation by the defendant." *See Carr*, 80 F.3d at 420.

*Withdrawal Would Prejudice the Government*

Ms. Zayas's case has been pending in this Court for almost six years. (*See* Docs. 1, 4 (April 24, 2012 Indictment and Arrest Warrant).) Even more distressing to the Court is the fact that it has been 11 years since Annalicia's death. The Government would have significant trouble locating the witnesses, much less questioning them on events that happened 11 years ago. The prejudice to the Government here would be substantial. *See Carr*, 80 F.3d at 420.

*Inconvenience to the Court and Waste of Judicial Resources*

As the *Carr* Court found, "some degree of inconvenience to the court" and "some waste of judicial resources from a plea withdrawal is inevitable." *Id.* at 420, 421. These factors weigh very slightly in favor of the Government.

*Likelihood of Conviction*

Related to the Court's discussion of the evidence weighing against Ms. Zayas, and as is apparent by the advice of Ms. Zayas's previous attorneys (*see*, *e.g.*, Doc. 189 at 2:20–3:11, 5:9–16), there is a strong likelihood that Ms. Zayas faces conviction of the charged crime.

13

## IV. Conclusion

Mr. Zayas's November 2017 interview does not constitute "new evidence." Even if the Court were to consider the interview as new evidence, Ms. Zayas has not asserted a credible claim of legal innocence. Moreover, the Court reiterates its previous findings that Ms. Zayas's guilty plea was knowing and voluntary and has a sufficient factual basis. Thus, there is no need to correct clear error or prevent manifest injustice.

In short, Ms. Zayas is still unable to provide a "fair and just" reason for withdrawing her guilty plea. The Court will deny the motion.

**THEREFORE**,

**IT IS ORDERED** that Ms. Zayas's Motion to Reconsider Motion to Withdraw Guilty Plea (Doc. 220) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**